## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ELISSA MERCER, *et al.,*                    )
                                            )
      **Plaintiffs,**                     )
                                            )
vs.                                         )          **Case No. 25-CV-2469**
                                            )
HON. CATHERINE TRIPLETT, *et al,*           )
                                            )
      **Defendants.**                     )
                                            )

### MOTION TO DISMISS PER FRCP (12(B)(1) AND 12(B)(6)

Come now the defendants, by and through their attorneys, Bradley E. Avery and Lisa D. Montgomery, and move the Court to dismiss the above-named suit brought under 42 U.S.C. 1983. Defendants move for dismissal based on Federal Rule of Civil Procedure (FRCP) 12(b)(1), lack of subject matter jurisdiction and FRCP 12(b)(6), failure to state a claim upon which relief can be granted, under the auspices of 11th Amendment Immunity, Qualified Immunity, and Judicial Immunity. The plaintiffs have requested $3 million in damages ($1,500,000.00 per plaintiff) against defendants Michelle Logsdon and the Honorable Catherine Triplett among others. *See* Document 1, p. 5, Item C.

The federal case docketed by the plaintiffs is a request for review of the orders of the Kansas Supreme Court. A Petition for Writ of Mandamus was filed with the Kansas Supreme Court, on behalf of the plaintiffs on February 24, 2025. (Defendants Ex. A) On June 25, 2025, the Kansas Supreme Court denied the Petition for Writ of Mandamus. (Defendants Ex. E) Plaintiffs filed a Motion for Reconsideration of the Court's Order on July 8, 2025, and on August 14, 2025, the Chief Justice of the Kansas Supreme Court directed the office of the clerk to reject any future filings in the plaintiff's case. stating, "This case is closed." (Defendants Ex. F)

1. **The Federal District Court of Kansas lacks jurisdiction over an Order promulgated by the Kansas Supreme Court. The suit against Judge Triplett, et. al. should be dismissed.**

The plaintiffs introduce their law suit by stating they seek "redress for independent (alleged) federal violations of the First and Fourteenth Amendments (a) orders entered without notice or hearing against a non-party, b) retaliatory case manipulation and sanctions threats, and c) hearing conducted during a stay and while a writ naming the presiding judge was pending." Document 1, p.1.

The plaintiffs state, in Document 1, p. 1, their "Introduction and Non-Abstention Statement", that "Plaintiffs do not seek federal appellate review of the state court judgments and do not ask this Court to vacate any state order." Yet, the entirety of their "Claims for Relief" center on the judgments, hearings and orders of Judge Triplett, a district court judge stationed in the District Court of Johnson County, Kansas Civil Department-Family Court, *See* Plaintiff's Document 1, p.3.

"The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman* 435 U.S. 349, 362 (1978). The Plaintiffs aver that they do not seek "federal appellate review of state-court judgments and do not ask this Court to vacate any state order." Yet, the plaintiffs request "Damages against non-immune defendants (Fairbanks, Logsdon, Triplett) to the extent of non-judicial acts." Document 1, p. 5, Item C in their "Request for Relief."

2

The plaintiffs have not identified any function or nonjudicial act performed by Judge Triplett or any other judge, but rather the plaintiffs criticize the substance and legality of the orders or decisions issued by Judge Triplett.

The United States District Courts have no jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in the Supreme Court of the United States. *District of Columbia Court of Appeals vs. Feldman.* 103 S. Ct 1303, 1314-1317 (1983). *See* also *Facio v. Jones* 929 F. 2nd 241 (1991) (10th Cir.) "The *Feldman* rule is soundly and clearly based in the language of 28 U.S.C. § 1257 and in the public policy of federalism. Federal district courts are specifically proscribed from the business of reviewing state court judgments."

Further, 28 U.S.C. 1257(a) states;

"(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

Therefore, because of the Kansas Supreme Court's ruling in *Feldman*, op. cit., which states the Federal District Courts have no jurisdiction over challenges to rulings made by the Kansas Supreme Court combined with 28 U.S.C. 1257(a), as stated above, the federal law suit against Judge Triplett, *et al.* suit should be dismissed.

In Claim I for Relief, Document 1, p. 3, Count 1, Plaintiffs allege they have been deprived family integrity and parental rights by Judge Triplett's Order Staying the decision on

3

the Motions Pending Appeal and by the Journal Entry from the May 12, 2025, hearing on

Petitioner's Motion for Expedited Enforcement of Judgment. (Exs. 3, 9)

In Count II of Document 1, p.3, Plaintiffs allege that the "Defendant's actions are

arbitrary and conscience-shocking: conditioning legal custody on unaffordable payments

expanding 'legal custody' to extracurriculars and reducing parenting time without cause (Ex. 9),

and imposing restraints on a non-party without jurisdiction. (Ex. 2) These actions violate

substantive due process."

In Count III of Document 1, p.3, "Plaintiffs engaged in protected activity: Mercer's Writ

(Ex. 6), recusal and stay motions, and public petitioning. In response Defendants escalated (a)

denial orders during stay (Ex. 4); (b) retaliatory sanctions (Ex. 5) and (c) scheduling the CMC

while writ/recusal were pending (Ex. 7). The timing and pattern would chill a person or ordinary

firmness. Causation is plausible from temporal proximity and sequence."

In Count IV of Document 1, p.3, "Triplett, Logsdon, Fairbanks (and, for prospective

relief, Droege/Brewer) agreed to maintain Triplett's control and to deter Plaintiff's filings, overt

acts include the May 12 hearing during a stay (Ex. 9) the August 13 scheduling (Ex. 7) and

sanctions filing (Ex. 5). Plaintiffs were thereby deprived of federal rights."

In Count V of Document 1, p.3, "Defendants conspired to deter and intimidate Plaintiffs

from attending or testifying in court and from petitioning; scheduling hearings and conferences

during a stay (Exs. 3, 9), and threatening sanctions/fees (Ex. 5). Overt act includes Logsdon's

August 13 email (Ex. 7). 'Injury includes lost parenting time, costs, and child petitioning.'"

In Count VI of Document 1, p.4. Plaintiffs allege Civil RICO violations under 18 U.S.C.

1962 (c) and (d) (Particularized; business property injury pleaded).

The plaintiffs in the counts cited above have failed to identify what could be surmised to be abnormal activity functions that were not those of a judge. *Stump. v. Sparkman*, op. cit. Hearings were provided, orders were issued, nothing was done that would deprive the judges and judicial personnel of their absolute judicial immunity.

### 2. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution was ratified on February 7, 1795. It states, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The plaintiffs have elected to file suit against Judge Triplett without consideration of the fact that, "The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *See Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir. 2007), *Wagoner Cnty. Rural Water Dist. No. 2. v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir.2009). This suit was brought under the auspices of 42 U.S.C. 1983 which states:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage,  of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper  proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

But, "A state agency is not a "person" under § 1983 and is immune from suit under the Eleventh Amendment." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). While the amendment's literal terms bar only federal-court lawsuits against a State by citizens of *another*

State or by foreigners, U.S. Const. amend. XI (emphasis added), it has long been established that a State's own citizens are likewise prohibited from haling the State into federal court. *See* also *Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252 (10th Cir. 2007). Only a waiver by the State or a valid abrogation by Congress are sufficient to remove the shield of Eleventh Amendment Immunity. *See Va. Office for Prot. & Advocacy v. Stewart*, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675 (2011).

Kansas has not waived its 11th Amendment Immunity. Kan. Stat. Ann. § 75–6116(g) states, "Nothing in this section or in the Kansas tort claims act shall be construed as a waiver by the State of Kansas of immunity from suit under the 11th Amendment to the Constitution of the United States." Several decisions from the Federal District Court in Kansas reach the same conclusion, *Fox v. Wichita State Univ.,* 489 F.Supp.2d 1216, 1233 (D.Kan.2007); *Klein v. Univ. of Kan. Med. Ctr.,* 975 F.Supp. 1408, 1416 (D.Kan.1997) (same); *Ndefru v. Kan. State Univ.,* 814 F.Supp. 54, 55–56 (D.Kan.1993) (same); *Billings v. Wichita State Univ.,* 557 F.Supp. 1348, 1351 (D.Kan.1983)

Although plaintiff's Complaint names defendants in their personal and individual capacities, the allegations are all derived from the acts defendant Triplett, *et al.* performed in their official capacities as officers and employees of the Johnson County District Court. Congress did not intend to abrogate the immunity of states under the Eleventh Amendment when it enacted 42 U.S.C. 1983, and Defendants are entitled to absolute immunity for acts performed in their official capacity because state officials acting in their official capacity are not persons within the meaning of 42 U.S.C. 1983**.** *Neal v. Lewis* 325 F. Supp. 2d 1231 2004 citing *Will v. Mich. Department of State Police***,** 491 U.S. 58, 66-71 (1989).

Further, "…[g]enerally, employees of the state are acting under color of state law when acting in their official capacity." *See West v. Atkins*, 487 U.S. 42, 49 (1988); *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006); *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000); *Vang v. Xiong*, 944 F.2d 476, 479 (9th Cir. 1991). Even where state officials are administering a federally funded program, the state officials are still acting under color of state law. *See Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979)."

Regardless of whether, the alleged deprivation represents an abuse of authority or lies outside the authority of the official, if the official is acting within the scope of his or her employment, the person is still acting under color of state law. *See Anderson*, 451 F.3d at 1068-69; *McDade*, 223 F.3d at 1140; *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

Although the State of Kansas is not named in the law suit, "A governmental agency that is an arm of the state is not a person for purposes of § 1983." *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona,* 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

"Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries," *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 50, 115 S. Ct. 394, 130 L.Ed.2d 245 (1994) (alteration omitted), the agency will be found to be an arm of the state, *See Oberg II,* 745 F.3d at 137; *Cash v. Granville Cnty. Bd. of Educ.,* 242 F.3d 219, 223 (4th Cir.2001). "[I]f the State treasury will be called upon to pay a judgment against a governmental entity, the [entity is an arm of its creating state], and consideration of any other factor becomes unnecessary." *Cash,* 242 F.3d at 223.

7

The Eleventh Amendment bars a suit for damages against a state in federal court, absent a waiver of immunity by the state. *Edelman v. Jordan*, 415 U.S. 651, 663; 94 S. Ct. 1347, 1355-56; 39 L.Ed. 2d 662 (1974). Further, K.S.A. 75-6109 states: "Except as provided in the Kansas (tort) claims act, a governmental entity is liable, and shall indemnify its employees against damages, for injury or damage proximately caused by an act or omission of an employee while acting within the scope of his or her employment." Thus, if the plaintiffs were awarded the $3 million in damages sought, the victim would be the financial resources of the State of Kansas, which the 11th Amendment strictly prohibits.

Congress did not abrogate 11th Amendment Immunity when it enacted §1983. *Quern v. Jordan* 440 U.S. 332, 341; 99 S. Ct. 1139, 1145, 59 L.Ed. 2d 358 (1979). The Eleventh Amendment presupposes that each State is a sovereign entity in our federal system and that, "…[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without (a state's) consent." *Hans v. Louisiana* 134 U.S. 1, 13; 10 S. CT. 504, 506, (1890).

While a state may waive its sovereign immunity at its pleasure, and in some circumstances, Congress may abrogate it by appropriate legislation, but absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State. *Hans v. Louisiana* 143 U.S. 1 10-11 (1890). Kansas has not waived its immunity under K.S.A. 75-6116(g). Therefore, this suit cannot be lawfully brought against the State of Kansas and its judicial employees. Plaintiff lacks subject matter jurisdiction per FRCP 12(b)(1) and has failed to state claim upon which relief can be granted (FRCP 12(b)(6)).

### 3. Judicial Immunity

The U.S. Supreme Court consistently has held that judges are absolutely immune from civil suits for damages. Although unfairness and injustice to a litigant may result on occasion,

8

"…it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in her, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 13 Wall. 335, 347 (1872).

Judicial Immunity is a well-established common law rule. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S., at 554, 87 S. Ct., at 1218 (1967). "Immunity applies even when the judge is accused of acting maliciously and corruptly." *See* also *Harlow v. Fitzgerald*, 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2736–2739, 73 L.Ed.2d 396 (1982). Allegations of malice are insufficient to overcome qualified immunity. This Court in *Stump* made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump* 435 U.S., at 362, 98 S.Ct., at 1108. *See* also *Forrester v. White,* 484 U.S., at 227–229, 108 S.Ct., at 544–545. (1988)

If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Id.,* at 356, 98 S.Ct., at 1105. *See* also *Forrester v. White,* 484 U.S., at 227, 108 S.Ct., at 544 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in *Stump* indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S., at 362, 98 S.Ct., at 1108. A judge will not be

deprived of immunity because the action (s)he took was in error, was done maliciously, or was in excess of her authority, but rather she will be subject to liability only when she has acted in the "clear absence of all jurisdiction," *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646. Pp. 1104-1105.

A judge is absolutely immune from liability for her judicial acts even if her exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley, 13 Wall*., at 357, where it stated: "[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever."

Similarly, the Court of Appeals for the Fifth Circuit has held that a state district judge was entitled to judicial immunity, even though "at the time of the altercation [giving rise to the suit] Judge Brown was not in his judge's robes, he was not in the courtroom itself, and he may well have violated state and/or federal procedural requirements regarding contempt citations." *McAlester v. Brown,* 469 F.2d 1280, 1282 (1972). Among the factors relied upon by the Court of Appeals in deciding that the judge was acting within his judicial capacity was the fact that "the confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Ibid*. Based on the doctrine expressed in *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872), this Court has consistently adhered to the rule that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities."

Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being

sued for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption. *Pierson v. Ray,* supra, at 554, 87 S.Ct., at 1217–1218; *Bradley v. Fisher,* 13 Wall., at 349, 350.  Further, … [J]udicial immunity has ... been extended to non-judicial officers, like clerks of court, where their duties had an integral relationship with the judicial process." *Sawyer v. Gorman*, 317 Fed. App'x. 725, 728 (10th Cir. 2008). *See* also *Henriksen v. Bentley,* 644 F.2d 852, 855 (10th Cir. 1981) (immunity applies when court staff/clerks are acting "as an official aide of the judge"). Therefore, Ms. Logsdon, identified as a judicial assistant in the Complaint, and Ms. Brewer, identified in the Complaint as a Court Administrator (Document 1, p. 1), are beneficiaries of judicial immunity and not subject to suit.

The Plaintiffs in this case have not established that Judge Triplett or Judge Droege deviated from their judicial role in making their decisions and the issuance of orders from the bench. Instead, they have offered conclusory statements regarding Judge Triplett's unsupported by facts. Plaintiffs disagreed with her decisions from the state district court and appealed to the Kansas Supreme Court and that Court dismissed the plaintiffs' case in its entirety. As noted in *Harlow,* op. cit., judicial immunity is not overcome by allegations of bad faith or malice.

### 3.  Qualified Immunity

"Individual defendants named in a §1983 action may raise a defense of qualified immunity," *id.,* which "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law," *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir.2008). A public employee is entitled to qualified immunity in all but the most exceptional cases. *Tonkovich v. Board of Regents* 159 F. 3d 504, 516 (10th Cir.) 1998. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."
*Ramirez v. Oklahoma Dept. of Mental Health* 41 F. 3d 584, 592 (10th Cir. 1994) (quoting
*Harlow v. Fitzgerald* 457 U.S. 800, 818; 102 S. Ct. 2727 (1982).

To overcome qualified immunity, a plaintiff must show that (1) the defendant violated the
plaintiff's constitutional or statutory rights and (2) the right in question was clearly established at
the time of the alleged violation. *McCormick v. Board of Shawnee County Comm'rs,* 272 Kan.
627, 642, (2001). A state official is immune unless prior case law squarely governs the conduct
at issue. *Brosseau v. Haugen* 543 U.SD. 194, 201 (2004). To determine whether the right was
clearly established, we ask whether "the contours of a right are sufficiently clear that every
reasonable official would have understood that what he is doing violates that right." "Ordinarily,
in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit
decision on point, or the clearly established weight of authority from other courts must have
found the law to be as the plaintiff maintains." *Fogarty v. Gallegos,* 523 F.3d 1147, 1161 (10th
Cir.2008) (quotations omitted).

For the purposes of this suit there are statutes governing the conduct of a child custody
case. Specifically, K.SA. 23-2210 (e) states,

> "…[i]f a court of competent jurisdiction within this state has entered an order
> pursuant to the revised Kansas code for care of children regarding custody of a
> child or children who are involved in a proceeding filed pursuant to this section,
> and such court has determined pursuant to K.S.A. 38-2264(k), and amendments
> thereto, that the orders in that case shall become the custody orders in the
> parentage case, such court shall file a certified copy of the orders with the civil
> case number in the caption and then close the case under the revised Kansas code
> for care of children. Such orders shall be binding on the parties, unless modified
> based on a material change in circumstances, even if such courts have different
> venues."

Under Tenth Circuit law, a plaintiff seeking to avoid summary judgment on qualified
immunity grounds must satisfy a heavy two-part burden by showing 1) the defendant violated a

constitutional or statutory right and 2) the right was clearly established at the time of the defendant's unlawful conduct. *Meacham v. Frazier* 500 F. 2nd 1200 (10th Circuit 2007). *cf. Harris v. Board of Educ. of the City of Atlanta* 105 F. ed. 591, 595 (11th Cir. 1997). Here, there are no violations of statutory law or constitutional law, only rulings the plaintiffs disagree with from the District Court in Kansas and the Supreme Court of Kansas. "In all but the most exceptional cases qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and liability for damages." *Tonkovich v. Board of Regents 159* F. 3d 504, 516 (10th Cir.1998).

The Court requires the right allegedly violated be "defined at the appropriate level of specificity" before it can be found to be clearly established. *Wilson v. Layne,* 526 U.S. 603, 615, (1999) (qualified immunity turned on whether reasonable officer could have believed that bringing media into the home while police executed arrest warrant was lawful). Further, absent controlling authority, the plaintiff must show that the state actor's actions were considered unlawful based on "a robust consensus of cases of persuasive authority." *Lyons v. Vaught,* 875 F.3d 1168, 1172 (8th Cir. 2017). As a result, "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. at 743. The qualified immunity doctrine enables government officials "to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service." *Wyatt v. Cole,* 504 U.S. 158, 167, (1992).

Respectfully submitted,

KRIS W. KOBACH
Attorney General

*/s/ Bradley E. Avery*
Bradley E. Avery, KS #13071
Assistant Attorney General
Lisa D. Montgomery KS #18243
First Assistant Attorney General
Office of Attorney General
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email:  brad.avery@ag.ks.gov
            lisa.montgomery@ag.ks.gov
*Attorneys for Defendants Triplett, Droege,*
*Logsdon, and Brewer*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Elissa Mercer
Thomas Stanowski
1308 E 123rd Terrace, Unit A
Olathe, KS 66061
*Pro Se*

*s/ Bradley E. Avery*
Bradley E. Avery, KS #13071