
EXHIBIT B

ELECTRONICALLY FILED
2024 Dec 11 PM 4:14
CLERK OF THE JOHNSON COUNTY DISTRICT COURT
CASE NUMBER: 20CV03397
PII COMPLIANT

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS CIVIL DEPARTMENT - FAMILY COURT

In the Matter of:
ERIN STANOWSKI
And
THOMAS STANOWSKI

Case no: 20CV03397
Division 21, Chapter 60

## FINAL ORDER MODIFYING CUSTODY, AND PARENTING TIME

This matter came before the Court for a Hearing on Petitioner/Mother's Motion to Modify Parenting Time, etc.

The Court, having considered the pleadings in this case, the evidence, arguments, and testimony and being well and duly advised hereby makes the following findings and enters the following orders:

1. **JURISDICTION:** The court has personal jurisdiction over the parties and the subject matter of this action.

2. **MATERIAL CHANGE IN CIRCUMSTANCES:**

   a. *Modification of an agreed upon plan.* The court does not need to find a material change in circumstance to change a temporary custody order or a parenting plan agreed to by the parties. *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 887 (2006).

   b. *Modification otherwise.* The court may change or modify any prior order of custody, residency, visitation and parenting time, when a material change of circumstance is shown. K.S.A. 23-3219.

3. **LEGAL CUSTODY and PARENTING TIME:** The Court finds that the legal custody and parenting time arrangement in Exhibit A is in the minor children's best interests and adopts such as the final order modifying legal custody and parenting time. The court incorporates Exhibit A as the order of the Court herein.

4. **FACTORS[1]:** The Court considered the following non-exhaustive list of factors in making this finding.

1 The Court's failure to mention a specific portion of the testimony or reference a specific exhibit is not an indicate that it was not considered, rather it is an indication of the weight the Court gave the testimony or evidence. The Court has considered all admitted evidence (testimony and exhibits) in its findings of fact and conclusions of law. "If evidence was admitted ... in a matter submitted to the court without a jury, and in the reasons for the decision the

a. <u>**Each parent's role and involvement with the minor child before and after separation;**</u> Prior to the parties separating, the parties lived together but Mother has traditionally made the children's medical appointments, etc.

b. <u>**The desires of the child's parents as to custody or residency (if known);**</u> The children are

c. <u>**The ages of the children and their desires if they are of sufficient age and maturity as to custody or residency**</u>: At the time of this order, B.S (YOB: 2014) is nine years old and A.S. (YOB: 2018) is six years old. Based on the children's ages and maturity levels, the Court considers their statements to their parents and the circumstances in which those statements were made.

d. <u>**The emotional and physical needs of the child;**</u>

   i. Mother is able to meet the emotional and physical needs of the children.

   ii. Father is unwilling, unable, and/or ill equipped to recognize the emotional needs of the children. Father and his significant other/fiancé/girlfriend have taken it upon themselves to tell the children that Mother is not their biological Mother. Father's reasoning is because "Mother started it." Father's reasoning was not credible. His testimony was self serving and the evidence to support his testimony did not support his statements. The evidence Father provided to support the notion that "Mother start it" and invited Father and his significant other to tell the children that Mother was not their Mother is a video where Father filmed a phone call between Mother and the minor children. To provide context, Father had just moved in his girlfriend and the children were very young. Mother had asked the children if they were asked to call another woman "Mom." Based on Father's attitude and general lack of respect for Mother's role in the minor children's lives, it is clear that the purpose of this question was to ascertain if Father was asking the children to call his girlfriend "Mom." Mother's question was certainly NOT an invitation for Father and his significant other to cruelly tell the children that Mother is not their Mother and to repeatedly say in front of the children "Take a DNA Test." There is no purpose for this other than to punish Mother and to do so at the expense of the emotional well-being of the minor children. This is only one example of Father and his fiancé/significant other completely ignoring the minor children's emotional needs and putting their own before the children.

   Further evidence to support Father's complete disregard of the children's emotional well-being is when asked if he thought that telling his children that their Mother, whom they love and has cared for them their entirely life, was not their Mother had any emotional impact on the

court does not state that the evidence was not considered, then it will be presumed in a subsequent proceeding that the court did consider the evidence in reaching its decision." Kan. Sup. Ct. Rul. 165(b). emphasis added.

children, his response, again, was essentially "Mother started it." When asked again, his response was, yes, it could have an impact on the kids, but no therapist has ever told him that it has. Yet, he objects to the children being in individual therapy. When asked if he thought his and his fiancé/significant other's statements would have any impact on the children's relationship with their Mother or with their self worth, again, he admitted that it would. Yet he did not think of stopping his traumatizing behavior or think of the possible detrimental impact it could have on his children's sense of self or their relationship with their Mother.

This lack of insight is detrimental to the children. Father is more interested in punishing Mother than his own children's well-being.

e. **_The interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests._**

   i. The children are bonded with each other, their Mother and their maternal grandparents.

   ii. The children are bonded with each other, and their Father. The children have significant interaction with Father's fiancé/significant other because she lives with them. There was evidence presented that Father's fiancé/significant other and Mother do not get along and have had verbal confrontations in front of the minor children.

f. **_The child's adjustment to the child's home, school and community._** The minor children are adjusted to their home, school and community. There was no evidence to the contrary.

g. **_The willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent._**

Father has a history of disrespecting or appreciating the bond between the children and Mother. Father has Mother listed in his phone as "C*NT." He admits that his children use his phone sometimes. While he says that that has changed, the Court does not find his testimony to be credible.

In addition to the Father and his fiancé/significant other telling the minor children that their Mother is not their Mother, another example of Father and his fiancé/significant other ignoring the emotional needs of the children is Father and his fiancé/significant other running over Mother's trash cans in Mother's driveway with the children in the car. The evidence to support this incident is Exhibit #31(a). The children told Mother that during the incident that their Father laughed and Father's fiancé/significant other commented that she wished the trash cans were full so that Mother would have to clean up the mess. This behavior is childish, petty, and a blatant disregard of the children's emotional connection with Mother. Father then wonders why the children are so disrespectful to their Mother and yet respectful to him. He lacks the insight that

3

the children are likely mimicking his behavior toward Mother. That he and his fiancé/significant other set the example of how Mother should be treated. Instead of acknowledging his actions, he blames the children's behavior entirely on Mother's parenting.

Father insists that his fiancé/significant other be a part of the parenting discussion simply because she is living with him. He believes that he should be able to rely on her yet chastises Mother for seeking help from the maternal grandparents. Thereby undermining her role as a parent.

h. *Evidence of domestic abuse, including, but not limited to: (a) a pattern or history of physically or emotionally abusive behavior or threat thereof used by one person to gain or maintain domination and control over an intimate partner or household member; or (b) an act of domestic violence, stalking or sexual assault.* Father's continued berating of Mother with the help of his fiancé/significant other is emotionally abusive to Mother. It's entire purpose is to undermine Mother and all at the expense of the minor children.

i. *The ability of the parties to communicate, cooperate and manage parental duties.* The parties struggle communicating with each other and coming to decisions regarding the minor children, their activities and their well-being. The parties distrust each other and question the other parent's parenting ability and motives.

An example of how difficult co-parenting is between the parties is that Father has testified that he will refuse to pay portions of the children's medical bills unless he is consulted before they go. He disagrees so often and adamantly that Mother testified that she, often times, does not forward him bills that need to be paid because she already knows he will say no.

Father testified that Mother can sign the children up for whatever she wants to or get them the services they need on her parenting time and that she should be responsible for the costs because, in summary, "that's the way it should be." Father lacks insight that some of these activities that Mother signs the children up for are things the kids enjoy. If he has that insight, he does not care and does not care about their well-being.

j. *The school activity schedule of the child.* The parties entered an agreement regarding the children's extra-curricular activities in their agreed upon order. The parties did have conversations about modifying that agreement when they attended BeH2O. However, both parties testified that the agreements they came up with win BeH2O were only partially followed.

k. *The work schedule of the parties.* Both parties work full time.

l. *The location of the parties' residences and places of employment.* Both parties live within a reasonable driving distance of each other and while they may rely on other people to assist getting the children to and from school and activities while they are working, it is managed.

m. *The location of the child's school.* Both parents live within a reasonable driving distance from the minor children's schools.

4

    *n.* *Other factors*.

        *i.* Father's Fiancé/Significant Other, and paternal family members. It is clear that Father's fiancé/significant other and some of Father's family members are vocal about their dislike of Mother. Father's fiancé/significant other is vocal about it in front of the kids and makes statements to the children that are detrimental to their emotional health and well-being. She undoubtedly feels entitled to have this opinion and to otherwise not have to respect Mother because Father does not require her to.

5. **CHILD SUPPORT**: The parties shall contact the hearing officer and schedule a hearing on the remaining issues of child support.

**IT IS SO ORDERED.**

*[signature]*

Judge of the District Court

**EXHIBIT A.**

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS CIVIL DEPARTMENT - FAMILY COURT**

In the Matter of:
ERIN STANOWSKI
And
THOMAS STANOWSKI

Case no: 20CV03397
Division 21, Chapter 60

**FINAL ORDER MODIFYING CUSTODY, AND PARENTING TIME**

The Court, having considered the pleadings in this case, the evidence, arguments, and testimony and being well and duly advised hereby finds that the following plan is in the minor children's best interests.

1. **LEGAL CUSTODY:**

    a. **Mother is granted Sole Legal Custody**. Joint legal custody is not in the children's best interests. It is in the best interests of the minor children that Mother be granted sole legal custody for the following reasons as well as the reasons stated in paragraph 5 (Factors): It is in the minor children's best interests that decisions

5

regarding their health, education, etc. be timely made. Father has demonstrated through his actions a lack of consideration of his children's emotional and physical needs, an inability to respect the role of Mother as a person and co-parent and an inability to put his children's needs before his own. In addition, Father has repeatedly stated in texts and through his actions that he will not follow the Court's orders if he does not otherwise agree with them. The Court has given him the parties an avenue to resolve issues in a timely manner, through a case manager. Father has refused to pay his portion of the case manager's fees, indicating that he does not, and should not have to. Thereby, again, putting the needs of his children to have timely decisions made before his own.

"Sole legal custody" means that the parent granted sole legal custody has the primary right to decide matters of health and education in the child(ren)'s best interests. The parent not granted sole legal custody may make emergency decisions affecting the child(ren)'s health or safety when the child(ren) are in that parent's physical care and control. The grant of sole legal custody to one parent does not deprive the other parent of access to information, including school and medical records, regarding the child(ren) unless the court specifically orders otherwise.

    i.    Sole legal custody DOES NOT MEAN "full custody." There is no such thing in Kansas as "full custody."

    ii.    Sole legal custody DOES NOT MEAN that the parent with sole legal custody decides IF the other parent gets to see the child.

    iii.    Sole legal custody DOES NOT MEAN that the parent with sole legal custody decides when, where, how, or if the other parent has time with the child (this is determined by the parenting schedule).

    iv.    Sole legal custody DOES NOT MEAN that the parent who does not have sole legal custody cannot make emergency decisions to protect the child's health, education, or welfare.

    v.    Sole legal custody DOES NOT MEAN that the parents should not discuss what is in the child's best interests for health, education, and welfare needs; BUT Sole legal custody DOES MEAN that the parent designated "sole legal custodian" decides if the parents cannot agree.

    vi.    Sole legal custody DOES NOT MEAN that the parent with sole legal custody can restrict the other parents access to information.

    vii.    Sole legal custody DOES NOT MEAN that the parent with sole legal custody is not required to inform the other parent in an appropriate way of the child's health, education, and general welfare status.

    viii.    Sole legal custody DOES NOT MEAN that the parent with sole legal custody can change the child's name or allow for the child's adoption.

    b. If Father complies with the Court's previous order to appoint a case manager, the Court will revisit the issue of sole legal custody.

2. **PARENTING TIME:** The Court, considering all factors in K.S.A. 23-3203 (discussed in paragraph 5), finds that the following parenting plan is in the best interests of the minor children.

    a. The minor child's residence for school and mailing purposes will be in the jurisdiction where Mother resides.

    b. <u>Parenting Time Schedule(s)</u>: The parties may agree to deviate from this schedule based on the needs of their family and the best interests of their children.

        i. <u>Regular Parenting Time</u>:
            1. <u>Mother</u>: The minor children shall be in the care, custody, and control of Mother at all times not with Father.

            2. <u>Father</u>: Father shall have parenting time alternating weekends from Friday after school until Sunday evening at 7:30PM during the school year and from Friday at 4PM to Sunday at 7:30PM during the summer.

        ii. <u>Holiday Parenting Time</u>: in the event he holiday parenting time and regular parenting time conflict, holiday parenting time will take priority.

|  | Even years | Odd years |
| --- | --- | --- |
| <u>Easter Weekend</u>: Saturday at 7:30PM until Sunday at 11:30AM. | Mother | Father |
| <u>Easter Weekend</u>: Sunday at 11:30AM until 7:30PM | Father | Mother |
| <u>Mother's Day</u>: 9AM until 7:30PM | Mother | Mother |
| <u>Memorial Day</u>: Friday after school until Monday at 5PM | Mother | Father |
| <u>Father's Day</u>: 9AM until 7:30PM | Father | Father |
| <u>4th of July</u>: 9AM on July 4th until 9AM on July 5th | Father | Mother |
| <u>Labor Day</u>: Friday after school until Monday at 7:30PM | Father | Mother |
| <u>Halloween</u>: after school or 3PM until 7:30PM | Mother | Father |
| <u>Thanksgiving</u>: 9AM until 3PM | Father | Mother |
| <u>Thanksgiving</u>: 3PM until 9AM next day. | Mother | Father |
| <u>Christmas Eve/Day</u>: During odd numbered years, Father shall have the children on December 24th after work until Christmas Day at 11AM at which time the children will go to their Mother's. During Even numbered years, Mother will | | |

7

| | | |
|---|---|---|
| have the children on December 24th at 5PM until Christmas Day at 11AM in which they will go to their Fathers. Regular parenting time will resume on December 26th at 9AM. | | |
| New Years Eve/Day: December 31 at 3PM until January 1st at 5PM. | Father | Mother |
| Parent's Birthday: 9AM until 7:30PM when the children are not in school and from 4PM until 730PM when the children are in school. | | |
| Children's Birthdays: Parents shall follow the standard parenting time schedule unless otherwise agreed by both parents in writing in advance. No vacation periods shall be scheduled during the children's birthday. | | |

    iii. Vacation: Father and Mother shall have two (2) seven day periods of uninterrupted parenting time during the children's vacation. The parties agree that vacation time shall not be exercised over any party's holiday parenting time. Each party must provide the other party with ninety (90) days notice prior to exercising the same. In the event that the parties desire to use the same time period, Mother's vacation time shall take priority in Even years and Father's vacation time shall take priority in odd years.

Trips with maternal or paternal grandparents are allowed, but if the children are to ever travel alone with a grandparent, travel must be approved by both parents with a 30 day approval period. Trips cannot be scheduled on the other parent's holiday parenting time or the children's birthdays.

    iv. Transportation: It shall be the responsibility of the parent scheduled to have parenting time with the children to pick up the children at that time. A parent should only wait 30 minutes before making other plans if a picking up aren't does not show up or give a reason for being late. Only emergencies should change the pick up and return time unless both parents agree to a change in schedule. Maternal and Paternal grandparents may assist both parties in transportation. So may any appropriate adult. No person that has a no contact order with the minor children shall transport the minor children or be with the parent while transporting the minor children.

    v. Costs: Any costs directly resulting from changes in scheduling will be the responsibility of the parent requesting the schedule change.

3. **COMMUNICATION:**

    a. Parents shall not degrade or allow any third party (including family members, friends, or significant others) to degrade the other parent in front of or within hearing distance of the minor child.

8

b. The parents shall communicate directly with one another regarding the care, custody, and control of the minor child only and not use the minor child as a means of communication between the parents.

c. Neither party shall, in any way, communicate to the children that either parent is not the minor child(ren)'s parent to the minor children or in front of the minor children.

d. Neither party shall discuss the court proceedings with the minor children or share the court documents with the minor children.

4. **NO CONTACT ORDER**:

   i. Elissa Mercer shall have no contact with the minor children at any time: It is not in the children's best interest for them to be around Father's fiancé/significant other, Elissa Mercer. Ms. Mercer has no legal rights to the children and it is not in the children's best interest for them to be around an individual that consistently undermines the minor children's relationship with their Mother. For this reason, the Court finds that it is NOT in the best interests of the minor children for them to have contact with Elissa Mercer, Father's significant other.

   ii. ONLY Petitioner/Mother and Respondent/Father shall attend parent teacher conferences regarding the minor children. Significant others/fiancés/step-parents shall not attend.

5. **INDIVIDUAL THERAPY & MEDICATION**:

   a. B.S shall continue or reengage in individual therapy. Both parties shall be financially responsible for B.S.'s individual therapy based on line D.2 or D.3 of the child support worksheet. Therapy shall continue unless otherwise ordered by this Court or unless a therapist indicates that it is no longer therapeutically necessary.

   b. The parties shall ensure that the minor children receive their prescribed medication as directed.

6. **EXTRA CURRICULAR ACTIVITIES**: The parties agree to discuss plans to involve the children in extra-curricular activities. The parties agree that they will bring the children to their scheduled extra-curricular activities during their parenting time. The costs of the children's extra-curricular activities shall be shared equally.

7. **MOVING**: Statutory Requirement to Notify Other Parent of Address Change.

   a. Mother and Father shall each notify the other parent of any address change in writing no less than 30 days before changing address by sending written notice to the other parent by certified mail – restricted delivery, return receipt requested, at that other parent's last known address.

   b. Mother and Father shall each notify the other parent of any plan to remove any child(ren) from the State of Kansas for more than 90 days by sending written notice

    to the other parent by certified mail – restricted delivery, return receipt requested, at that other parent's last known address.

  c. A parent is not required to give written notice of removal to the other parent under either (A) or (B) if the other parent has been convicted of a crime specified in Article 54 (crimes against persons), Article 55 (sex offenses), or Article 56 (crimes affecting family relationships and children) of Chapter 21 (Crimes and Punishments) of the Kansas Statutes Annotated to which the child(ren) was the victim.

  d. Failure to notify the other parent of a change of address or removal of the child(ren) from the State of Kansas is an indirect civil contempt punishable as provided by law. In addition, the court may assess reasonable attorney fees and other expenses against the parent required to give notice. Furthermore, a change of the residence or removal of the child(ren) may be considered a material change of circumstances which justifies modification of a prior order of legal custody, residency, child support or parenting time.

## 8. OTHER ORDERS:

  a. **Children's personal property**: The children's clothing, toys, etc. is their property and they should be able to take to to either home to use and enjoy such. Parents shall cooperate regarding the transfer of clothing, toys, school supplies, uniforms, extra-curricular needs, etc. between the homes.

**\*\*\* END OF FINAL ORDER MODIFYING LEGAL CUSTODY AND PARENTING TIME \*\*\***

*[signature]*
_____
**Hon. Catherine Decena Triplett**